BICKNALL & SKINNER *v.* RESOLVED WATERMAN.

Where a concluded agreement for the exchange of a specified lot of cotton for a specified note of a third person, at an agreed price for the cotton, has been made through a broker acting for both parties, the note of the purchaser of the cotton to be given for the difference, and nothing remains to be done but to deliver the cotton and receive the notes, it is no defence to an action upon the contract for not delivering the cotton, upon tender of the notes, that before the contract was entered into the maker of the first-named note had failed, both parties and the broker being at the time of contract ignorant of the failure; the law implying, in such contract of exchange, no warranty of the solvency of the maker of the note at the time of contract.

If, before the expiry of the usual time for delivery under such a contract, the defendant give notice to the broker that on account of the insolvency of the maker of the note at the time of contract, he shall decline to deliver the cotton under it, he cannot object that the plaintiff did not formally tender the note and demand the cotton until ten days after such usual time of delivery.

The rule of damages in such case, no other damages having been proved, is the value of the note in money at the time of contract, at the stipulated price for the cotton to be received in exchange, with interest upon that value from the day the cotton was demanded; the note, which had been deposited in the registry of the court, to be at the disposal of the defendant.

ASSUMPSIT on a contract for the sale of sixty-five bales of cotton, made by the defendant with the plaintiffs. The declaration alleged in substance, that on the 24th day of November, 1856, at Providence, the plaintiffs, at the special instance and request of the defendant, bought of him sixty-five bales of Augusta cotton marked "Hoppin," at and for the agreed price of $13\frac{5}{8}$ cents per pound, upon a credit of six months, and in payment therefor, the defendant then and there agreed with the plaintiffs, to receive a certain promissory note made by one John E. Weeden for about $1,250, and for the balance due for the cotton, to receive the promissory note of the plaintiffs; and that the plaintiffs, then and there, in consideration of said sale, agreed with the defendant to purchase said cotton at said price per pound and upon said terms of payment; and in consideration of the said promises of the plaintiffs, the said defendant then and there promised and agreed to and with the plaintiffs to deliver to them said sixty-five bales of cotton on request; and the plaintiffs aver, that they have always been ready to receive and pay for said sixty-five bales of cotton, at the price and in the manner aforesaid,—and that, on the      day of De-

cember, 1856, they tendered to the defendant a note made by the said John E. Weeden, dated September 15, 1856, at six months, for the sum of $1,213.04,—being the note agreed on as aforesaid, as part of the price of said cotton, and their own note for the balance ; but the defendant then and there refused to deliver said cotton, or any part of it, to the plaintiffs. And the plaintiffs further claimed as special damage, that after the said contract the said John E. Weeden suspended payment ; whereby, and in consequence of the, defendant's refusal to take the said note of said Weeden, the plaintiffs had lost a certain other large sum of money, to wit, the sum of $1,500. The declaration also contained the money counts, and the whole amount of damages claimed in it was $5,000.

To this declaration the general issue was pleaded, and upon joinder therein, the case was tried to the court, in law and fact.

Upon the trial it appeared, that on the 24th of November, 1856, being Monday, the cotton was sold by the defendant to the plaintiffs, through a broker, by sample, upon the terms set forth in the declaration ; the broker having closed the bargain towards the evening of that day, after two interviews with the defendant, in the interval of which the defendant had, at the request of the broker, inquired as to the solvency of Weeden. The memorandum, made the same evening by the broker, as the agent of both parties, in his books, was as follows :—

" November 24, 1856. Resolved Waterman, to brokerage on sixty-five bales of Augusta cotton, marked ' Hoppin '—sold Bicknall & Skinner at 13⅝ cents, at six months, for John E. Weeden's note for about $1,250—balance, their own."

It further appeared, that the bargain was made under the well-known practice of the cotton trade in Providence, according to which about half the cotton sold in that market is sold by way of exchange for the notes of third persons, which are " put off" without indorsement, as sworn by the broker, for cotton. On Thursday—which was Thanksgiving day—following the sale, the broker then having Weeden's note in his possession for the purpose of delivery to the defendant, it was

Bicknall & Skinner *v.* Waterman.

first learned by all parties that Weeden had stopped payment the Saturday previous; and in an interview between the broker and the defendant upon the subject on the day following, Friday, the latter informed the broker that he should not deliver the cotton under the contract, on the ground that Weeden, whose note he was to take, had failed previous to the contract— a view of the defendant's rights to which the broker at the time assented. About ten days subsequent to this, the plaintiffs having in the mean time taken counsel, a formal tender of Weeden's note, and of their own for the balance, was made by the plaintiffs to the defendant, and the cotton demanded; but the defendant rejected the notes and refused to deliver the cotton, upon the ground before taken with the broker, to wit, that Weeden, whose note was stipulated to be received in part for the cotton, had failed before the contract. It was also proved by the broker, there being no testimony to the contrary, that there was no unusual delay on the part of the plaintiffs in delivering Weeden's note to him on Thursday following the sale, in order to delivery to the defendant and the obtaining from him of the cotton.

*F. E. Hoppin*, with whom was *T. A. Jenckes*, contended:—

1. That the mutual sale of the note and cotton was complete, by the contract; nothing further being necessary to place the note at the risk of the defendant and the cotton at the risk of the plaintiffs; and that, in such a case, in the absence of fraud, not pretended here, the defendant must bear the loss from the insolvency of the maker of the note, which by the contract he assumed upon himself. Byles on Bills, 122–125, 307; 2 Am. Lead. Cases, Hare & Wallace's notes, 180–189.

2. That the principle of the right of stoppage *in transitu* does not apply to a case like this, where the risk of the failure of *a third person* is by the contract taken by the vendor, who claims to stop in consequence of it; but only in case of the unforeseen failure of the vendee himself, when the goods are sold on his credit.

3. Within three days of the sale, the defendant informed the broker that he would not deliver the cotton, on account of Weeden's failure, and so dispensed with a formal tender of his

note; and when *ex abundanti cautela*, subsequently, a tender of the notes was made and the cotton demanded, the refusal to receive and deliver was not put by the defendant upon the lateness of the tender and demand, but upon the original ground taken with the broker within three days of the sale.

*Matthewson*, with whom was *Bradley*, submitted the following points and authorities:—

1. This contract is not an exchange, but an agreement to sell the cotton for a *price certain*, and to receive *in part payment* Weeden's note, and is *so stated* in the declaration.

2. The vendor has *a lien* upon the goods for the price until delivery, and whether they remain in his hands, or are *in transitu;* the right of stoppage *in transitu* being but an extension of the right of detention. *Rowley* v. *Bigelow*, 12 Pick. 307, 313; *Arnold* v. *Delano*, 4 Cush. 33, 38.

3. This right is not divested by the vendor's agreeing to receive, and actually receiving, the *note of the vendee* in payment. *Ferse* v. *Wray*, 3 East, 93; *Tarleton* v. *Allhusen*, 2 Ad. & El. 32; *Edwards* v. *Brewer*, 2 Mees. & Wels. 375; *Arnold* v. *Delano*, 4 Cush. 33.

4. The same principle is recognized, when the agreement is to pay in the notes of *a third person*, and the third party fails before delivery. *Owenson* v. *Morse*, 7 T. R. 64; *Roget* v. *Merritt*, 2 Caines, 117; *Newhall* v. *Vargus*, 13 Maine, 93; *Parks* v. *Hall*, 2 Pick. 206, 212. There are no contrary decisions, and there is no distinction in principle in the two cases. In *Arnold* v. *Delano*, 4 Cush. 39, Shaw, C. J., says: "But the law, in holding that a vendor, who has thus given credit for goods, waives his lien for the price, does so on one implied condition, which is, that the vendee shall keep his credit good;" and there is no sound reason why this law should not imply the same condition of continued solvency, as to a third person on whose credit the goods were sold.

5. *Roget* v. *Merritt*, 2 Caines, 117, and *Leger* v. *Bonnaffe*, 2 Barb. S. C. R. 475, are identical with the case at bar, and no case can be found doubting or modifying either of those cases. The opinion in the former case was delivered by the able and learned Judge (since Chief Justice) Spencer, and is cited as

authority by KENT, in *Marble* v. *Hatfield,* 2 Johns. 461, and in *Tobey* v. *Barber,* 5 Johns. 73. The cases in "Byles" are all distinguishable from the one at bar.

6. Plaintiffs have lost their right, if any they ever had, by laches. See *Camidge* v. *Allenby,* and *Rogers* v. *Langford,* cited at the hearing. And as to what is a reasonable time, see also *Hunt* v. *Insurance Company,* 5 M. & S. 47 ; *Howe* v. *Huntington,* 15 Maine, 350.

7. The plaintiffs' claim is inequitable and unconscionable, and should not be favored. On the contrary, this right to detain the goods claimed by the defendant is so equitable, that it has always been favored by courts of law and equity. See Cross on Lien, 363, where it is said that eminent judges have regretted that the common law was not equally favorable to the vendor, in this respect, with the law of some other countries, and where the authorities are cited.

AMES, C. J. This is a mixed contract of sale and exchange, by which the defendant, on the 24th day of November, 1856, engaged with the plaintiffs, through a broker, to sell to them a specified lot of Augusta cotton, being sixty-five bales marked " Hoppin," at 13⅝ cents per pound, for the note of one John E. Weeden for about twelve hundred and fifty dollars, having then some four months to run ; the balance to be secured by the note of the plaintiffs at six months. It is in proof, that about one half of the sales of cotton in the market of Providence are made in this way of barter for the notes of third persons—in which it is understood, as sworn by the broker, and as has been frequently proved before us, that the notes are "put off," that is, exchanged for the cotton ; the very purpose of the transaction on the part of the purchaser being, to get rid of the risk of the solvency of the paper, even though he pay an enhanced price for the cotton. The testimony of the broker who conducted this bargain shows, that so far as the note of Weeden would go towards the price of the cotton at the agreed rate,—such was the nature of this contract ; time being expressly given to and taken by the defendant to make inquiries concerning the solvency of Weeden, before he bound himself to it. The contract, as of a present sale and exchange, was concluded by the assent

of both parties, and was so entered in the broker's book on the evening of the 24th of November; and the subjects of the contract being perfectly identified by it, and nothing remaining to be done but mutually to deliver the stipulated cotton and notes, the effect of the transaction, in the absence of fraud, was, at common law—and we have no statute which touches the matter—to vest the title to the cotton in, and place it at the risk of the plaintiffs, and to vest the title to Weeden's note in, and place it at the risk of the defendant. Such was the view which forced itself upon my own mind when the case was first tried before me with a jury, and such is the conclusion to which we have all arrived, upon the maturest consideration of the arguments and authorities which have been pressed upon our attention.

The well-known common-law principle, applicable alike to sales and exchanges of personal things, is, that fraud or warranty is necessary to render the vendor or exchanger liable, in any form, for a defect in the quality of the thing sold or exchanged. Applying this principle to the sale or exchange of the note of a third person, transferred by indorsement without recourse or by delivery merely, the vendee or person taking it in exchange takes the risk of the past or future insolvency of the maker, or other party to it; unless indeed, in case of past insolvency, the vendor or exchanger is guilty of the fraud of passing it off with knowledge of that fact. The case of a sale or exchange of a forged note is equally within the above principle; since the parting with it for value, is a representation, and so a warranty, that it is the note of the person whose note it purports to be, that is, is the thing, as which, it is sold or exchanged. Although decisions may undoubtedly be found departing from these ancient common-law principles, yet this is the settled doctrine of Westminster Hall, and is supported by the main current of American authorities. Byles on Bills, 122–125, 307, and cases cited, especially *Camidge* v. *Allenby*, 6 B. & C. 373; *Gompertz* v. *Bartlett*, 24 Eng. L. & Eq. 156; *Gurney* v. *Womersley*, 28 Ib. 257; *Hall* v. *Conder*, 38 Ib. 259, and cases cited; 2 Am. Lead. Cases, Hare & Wallace's notes, 180–189. As remarked by Sergeant Byles in his valua-

ble treatise, after quoting several conflicting American cases bearing upon this subject, "the confusion has arisen from neglecting to distinguish between questions of law and questions of fact." Byles on Bills, 122, n. i. In other words, what was the agreement of the parties with regard to the transfer of a note or bill, that is, whether it was by way of sale or exchange, or, in case of a precedent debt, whether by way of complete payment or as mere security for payment of it, is a question of fact, and varies with the proof, direct and presumptive, in cases in other respects similar. It is obvious what contrariety of decision must necessarily arise if courts, mistaking their province, undertake to decide such questions as if they were questions of law; and, however they decide them, of what little value their decisions must be, as precedents.

In the case at bar, the matter of fact has been withdrawn from the jury, and, under the statute, has been submitted to us by the parties, along with the matter of law. We find, in fact, that the defendant agreed to take the note in question, so far as it would go, in exchange for his cotton; and this, without any fraud practised upon him by the plaintiffs, either by expression or suppression, and without express warranty, on their part, of the solvency of the maker of the note. In such a case, the law certainly implies no warranty by the plaintiffs of the solvency of the maker of the note; and we see no reason why they should not be entitled to the benefit of a contract fairly made by them, because the risk assumed under it by the defendant has chanced to turn against him.

The case of *Roget* v. *Merritt*, 2 Caines, R. 117, is relied upon as sustaining the defence, that by the insolvency of Weeden, the consideration agreed to be given to the defendant had wholly failed before the execution of the contract by delivery; and upon that ground, that he had a right to retract from the contract. The note existed at the time of the contract, like the sea-damaged goods sold during a voyage, or the annuity whilst the person upon whose life it was dependent was *in extremis*, and though perhaps of little value, will, like them, support a contract of sale which is based upon it; (*Sutherland* v. *Pratt*, 11 M. & W. 296; *Hastie* v. *Couturier*, 20 Eng. L. & Eq.

Bicknall & Skinner *v.* Waterman.

R. 535;) and it would be a singular perversion of a contract, the legal effect of which is, that the risk of the value of a note is to be assumed by one contractor, to say, that he was freed from the contract upon the ground of failure of consideration, because the note did not turn out to be as valuable as he anticipated.

It is also contended, that in analogy to the right of stoppage *in transitu,* the defendant, upon ascertaining the failure of Weeden, was equitably entitled to retain possession of the cotton, until that portion of the price represented by his note had been paid or secured. This defence, too, ignores the consideration, that the legal effect of this contract was, to put upon the defendant the risk of Weeden's solvency; since no one can suppose, that a vendor can equitably refuse to deliver to the vendee the goods sold, when he is tendered for them precisely what he stipulated for, unchanged, except in a particular, the risk of which by the contract he took upon himself. It is because, and only when the vendor has not what he stipulated for—the note of a solvent person—that his equity, to stop *in transitu,* arises. All the cases of stoppage which can be found, are cases in which the contract of sale created a debt due from the vendee to the vendor, as *mere security* for which, the credit, in some shape, of the former, or of some third person, was relied upon by the latter, which, pending the completion of delivery, had become worthless from insolvency; not a case, in which, as here, a specific note of a third person had been taken, or contracted to be taken, by way of exchange for the thing sold. The case of *Owenson* v. *Morse,* 7 T. R. 60, which suggested this ground of defence, is quite specific upon this very distinction. Lord Kenyon expressly says, that " if the defendant had agreed to take the notes in payment, and to run the risk of their being paid, that would have been considered as payment, whether the notes had or had not been afterwards paid;" and adds, that " this is all that is proved by the cases that have been cited "—agreeing of course that this *was* proved by those cases. From the opinions of the other judges—Justices Grose and Lawrence—in that case, it seems that the view taken of the facts of it, was, that the plate was purchased for money,—that banker's notes having

been given for it as money, which turned out to be worthless, that the defendant had not got what the plaintiff had stipulated to give him,—and the plate not having been delivered, that the defendant might therefore retain it for the price. The same remarks apply to the case of *Roget* v. *Merritt,* 2 Caines, R. 117, so far as applicable to this ground of defence; since, the distinction just adverted to is, in that case, recognized as settled by *Puckford* v. *Maxwell,* 6 T. R. 52, as well as by the above case of *Owenson* v. *Morse.* The only other case cited which bears upon the point we are considering—that of *Parks* v. *Hall,* 2 Pick. 206— merely recognizes, that if the *security* given for the price of goods fails, intermediate the delivery, the vendor may retain the goods for the price; the very term " security" implying, of course, that what was thus given was designed to be collateral, merely, to the vendee's obligation to pay. In short, without taking up more time with what is so plain, to confound the vendor's right to retain for the price, or to stop *in transitu,* in case of the neglect or inability of the vendee to pay as stipulated, with the defendant's refusal to deliver, in such a case as upon the proof we find this to be, is to confound an equity, which all can see, with the breach of the very substance of a contract, which none can justify.

The last ground of defence, that the defendant is released from his obligation to deliver the cotton by the laches of the plaintiffs in not sooner tendering the note, is equally without foundation. On the third business day after the evening on which the bargain was concluded, Weeden's insolvency having on that day become public, the defendant met the broker, who had acted for both parties, in the street, and informed him that in consequence of Weeden's insolvency he should decline to deliver the cotton. Up to this time, as sworn by the broker, there had been no unusual delay on the part of the plaintiffs in the transaction; and the assent of the broker, as expressed at the time, to the view taken by the defendant of his legal rights, to which he also swears, cannot affect the legality of the claim of the plaintiffs.

The defendant's refusal to go on with the contract was communicated by the broker to the plaintiffs; and some ten days

after, having in the mean time taken the advice of counsel, the plaintiffs, under that advice, tendered the notes to and demanded the cotton of the defendant, as preliminary to the commencement of this action, when, the defendant declined to go on with the contract, upon the same ground which he had before taken with the broker. The notice given by the defendant clearly dispensed with an earlier formal tender of the note and demand of the cotton, if it did not dispense with them altogether. After such notice, the plaintiffs were entitled to time to consult counsel and to act upon their advice, without just complaint of laches, on that account, to be made by the defendant. The note was his, and if he had wanted it, he could have had it at any time on demand. Besides, he suffered and could suffer nothing by the delay now complained of, between the time of his notice to the broker and the time of the formal tender and demand made by the plaintiffs. Weeden's note had several months to run; and had it been in the possession of the defendant at the very time when he gave notice that he would not receive it, he could have taken no effectual means, by legal process, to secure it. The cases cited with regard to laches in returning bankers' notes, payable on demand, and passed in payment of a precedent debt after insolvency, and of returning forged bills or notes, have no application to such a case as this.

This action is properly brought for not delivering the cotton according to the contract, as in *Harrison* v. *Luke*, 14 M. & W. 141, it is said by Baron Parke, in such a case as this, it should be. As no other damages from the non-delivery are proved, except those occasioned by the plaintiffs not having received the amount of the note in cotton at the stipulated price, judgment must be entered against the defendant for the value of the note, in money, upon that basis, with interest from the time of the demand; the note, which has been deposited in the registry of the court for the defendant, being at his disposal.